1

2

3

4                    UNITED STATES DISTRICT COURT

5                         DISTRICT OF NEVADA

6                                  * * *

7   RYLEE JOHNSON and SIOBHAN          Case No. 3:22-cv-00520-LRH-CLB
    JOHNSON,
8                                       ORDER
                        Plaintiffs,
9

10        v.

11  WASHOE COUNTY SCHOOL DISTRICT,
    a political subdivision of the State of Nevada;
12  KATY UPTON, individually, and in her
    official capacity; JASON URMSTON,
13  individually, and in his official capacity;
    TAMMY HART, individually, and in her
14  official capacity; WENDY HAWKINS,
    individually, and in her official capacity;
15  SEAN HALL, individually, and in his official
    capacity; and DOES I–X,
16
                        Defendants.
17

18        Defendants Washoe County School District ("WCSD"), Jason Urmston ("Urmston"),

19  Tammy Hart ("Hart"), Wendy Hawkins ("Hawkins"), and Sean Hall ("Hall") (collectively,

20  "District Defendants") move the Court to dismiss (ECF No. 16) the causes of action against District

21  Defendants set forth by Plaintiffs Rylee Johnson ("Rylee") and Siobhan Johnson ("Mrs. Johnson")

22  (collectively, "Plaintiffs") in the First Amended Complaint ("FAC") (ECF No. 4). Plaintiffs

23  opposed (ECF No. 26) and District Defendants replied (ECF No. 31). For the reasons contained

24  within this Order, the Court grants District Defendants' motion to dismiss (ECF No. 16).

25  I.    BACKGROUND

26        Plaintiffs commenced this action based upon alleged bullying that took place while Rylee

27  attended Spanish Springs High School ("SSHS") in WCSD. Accepting the allegations in Plaintiffs'

28  FAC as true, Rylee played high school volleyball for SSHS as well as club volleyball for the

                                          1

1   Northern Nevada Juniors Volleyball Club ("NNJ") in 2020. ECF No. 4 at ¶ 21. Rylee began her
2   senior year at SSHS in the fall of 2021. *Id.* at ¶ 16. In 2020, Rylee chose to leave NNJ to play for
3   another private volleyball club. *Id.* at ¶ 23. While Upton coached both the NNJ and the SSHS
4   volleyball teams, this action concerns Upton's conduct while coaching SSHS in 2021. *See*
5   *generally id.* Around the start of the fall semester during Rylee's senior year in 2021, Mrs. Johnson
6   met with an assistant principal for SSHS, Urmston, and expressed her displeasure with Upton's
7   coaching style and decisions.[1] *Id.* at ¶¶ 23–30. Mrs. Johnson felt that the aggrieved coaching style
8   and decisions by Upton reflected her displeasure with Rylee for leaving NNJ in 2020. *Id.*

9       Plaintiffs allege that, over the weeks following the meeting, Upton told players they could
10   not let their parents "talk shit," became increasingly hostile towards Rylee, eliminated her playing
11   time, and ostracized her from the team. *Id.* at ¶¶ 34, 37–38. As a result, Mrs. Johnson and Rylee
12   met with SSHS administrators on September 7, 2021, regarding this experience with Upton. *Id.* at
13   ¶ 42. During the meeting, Plaintiffs recounted the alleged retaliation Rylee suffered following Mrs.
14   Johnson's initial meeting with Urmston. *Id.* at ¶¶ 44–45. In response, the principal at the time,
15   Hart, informed Mrs. Johnson and Rylee that Upton would be interviewed and made aware that she
16   was under increased scrutiny, and other WCSD administrators promised Plaintiffs that they would
17   observe Upton's coaching going forward to ensure proper conduct. *Id.* at ¶¶ 48, 53.

18       On September 15, 2021, the first full school week following the September 7th meeting,
19   Upton was removed from practice and placed on administrative leave pending an investigation.[2]
20   *Id.* at ¶¶ 61, 62. After Upton's removal, Rylee's teammates bullied and harassed Rylee about the
21   removal. *Id.* at ¶¶ 64–67. Rylee reported this bullying to her teachers and counselor, and Mrs.

---

[1]   The Court notes that the fall semester in 2021 started on August 9, 2021.
[2]   While SSHS eventually terminated Upton's employment, SSHS administrators' investigation resulted, in relevant part, in a determination that Upton did not retaliate against Rylee for leaving NNJ and Rylee was not bullied by her peers. ECF No. 4 at ¶¶ 86–90. While Plaintiffs complaint included allegations that Upton retaliated against Rylee for reporting to school officials Upton's inappropriate behavior while coaching, there was no finding as to whether Upton did so. *Id.* at ¶¶ 43–46, 49, 88. On appeal, the Nevada Department of Education ("NDOE") overturned SSHS's determinations, finding that Rylee had been the victim of bullying by both her peers and Upton. *Id.* at ¶¶ 86–90. The NDOE also determined that SSHS administrators committed "substantial procedural violations" when addressing Plaintiffs' situation. *Id.* at ¶¶ 100, 101.

Johnson requested that the principal initiate a safety plan to protect Rylee from continued peer harassment. *Id.* at ¶¶ 67, 71. Over the next several weeks, Mrs. Johnson continued to meet with SSHS administrators to report ongoing bullying. *Id.* at ¶¶ 72–84.

A safety plan was administered by SSHS officials on October 21, 2021.[3] *Id.* at ¶¶ 85, 92. As alleged in the FAC, when peer harassment continued to occur, Plaintiffs requested modifications to and enforcement of the safety plan due to alleged unsatisfactory measures taken by SSHS administrators. *Id.* at ¶¶ 92–94. On February 8, 2022, Plaintiffs allege that SSHS administrators removed key protections from the safety plan without notifying Plaintiffs and did not update the plan until February 21, 2022. *Id.* at ¶¶ 95–96. The alleged peer harassment and Plaintiffs' requests concerning the safety plan continued during the spring of 2022. *Id.* at ¶ 97.

In November of 2022, Plaintiffs commenced this action against District Defendants and Upton. ECF No. 1. In the FAC, Plaintiffs assert the following four causes of action: (1) First Amendment retaliation under 42 U.S.C. § 1983 ("Section 1983") against Upton; (2) municipal liability, i.e., a "*Monell*" claim, against WCSD; (3) negligence against WCSD;[4] and (4) intentional

---

[3]   In September of 2021, Hall replaced Hart as principal of SSHS. ECF No. 4 at ¶ 81.

[4]   The Court sua sponte addresses an issue with Plaintiffs' negligence claim arising from Plaintiffs asserting the claim against redundant defendants. Plaintiffs assert a negligence claim against (a) Upton, Hall, Urmston, Hart, and Hawkins, an assistant principal for SSHS, for actions taken within the scope of their employment with WCSD, i.e., exclusively in their official capacity, as well as (b) WCSD. ECF No. 4 at ¶ 142. In doing so, Plaintiffs unnecessarily repeat numerous allegations against District Defendants under the same theories of negligence. *Id.* at ¶¶ 144–46. For example, under three separate allegations, Plaintiffs allege that (a) Upton, (b) Hall, and (c) WCSD, Urmston, Hart, and Hawkins breached a duty of care "[b]y cultivating an environment that allowed bullying to flourish . . . ." *Id.* Other than in the context of a Section 1983 claim, when a plaintiff brings a claim against a municipal officer for actions taken in his or her official capacity, it is equivalent to the plaintiff bringing a claim against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 27 (1991). So, in the context of a negligence claim, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *See Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (internal citation omitted). Therefore, because Upton, Hall, Urmston, Hart, and Hawkins are each redundant defendants under Plaintiffs' negligence claim, the Court strikes them as defendants and the corresponding redundant allegations under Plaintiffs' third cause of action, those being subpart (k) of paragraph 145 as well as subparts (l), (n), and (o) of paragraph 146. *See* ECF No. 4 at ¶¶ 145, 46 (k), (l), (n), (o). Thus, the Court analyzes Plaintiffs' theories of negligence by addressing the allegations as set forth against WCSD rather than its employees acting in their official capacity.

1   infliction of emotional distress ("IIED") against Upton, Urmston, Hart, and Hall. *See* ECF No. 4.
2   On April 10, 2023, District Defendants filed a motion to dismiss, arguing that the Court must
3   dismiss each cause of action against District Defendants pursuant to Federal Rule of Civil
4   Procedure 12(b)(6). ECF No. 16.

5   **II.    LEGAL STANDARD**

6       A party may seek the dismissal of a complaint under Rule 12(b)(6) for failure to state a
7   claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss
8   for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule
9   of Civil Procedure 8(a). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th
10  Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim
11  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) does not require
12  "detailed factual allegations;" however, a "pleading that offers only 'labels and conclusions' or 'a
13  formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet the broad
14  pleading standard under Rule 8(a). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*
15  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

16      To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a
17  Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as
18  true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at
19  570). A claim has facial plausibility when the pleaded factual content allows the court to draw the
20  reasonable inference, based on the court's judicial experience and common sense, that the
21  defendant is liable for the alleged misconduct. *See id.* at 678–79 (stating that "[t]he plausibility
22  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that
23  a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with
24  a defendant's liability, it stops short of the line between possibility and plausibility of entitlement
25  to relief." (internal quotation marks and citations omitted)). Further, in reviewing a motion to
26  dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, "bare
27  assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the
28  elements'" of a claim are not entitled to an assumption of truth. *Id.* at 680–81 (quoting *Twombly*,

550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

## III.    DISCUSSION

### A.    Article III Standing

District Defendants first challenge Mrs. Johnson's standing to sue. ECF No. 16 at 6–8. Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Article III of the United States Constitution confines federal judicial power to adjudicating only genuine "Cases" or "Controversies." U.S. CONST. art. III, § 2. "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements": (1) a concrete and particularized injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision. *Id.* at 560–61.

District Defendants' challenge relates to Mrs. Johnson's standing on each of the four claims brought by Plaintiffs. ECF No. 16 at 6–8. However, the Court need not address Mrs. Johnson's standing as it relates to each of the four claims. As explained in this Order, the Court sua sponte dismisses, with prejudice, Plaintiffs' first cause of action. The Court also grants District Defendants' motion, dismissing, with prejudice, the second and fourth causes of action. Finally, in subsection D of this Order, which is labeled "Negligence", the Court explains that Plaintiffs negligence claim asserts five theories of negligence. The Court dismisses, with prejudice, the third cause of action as it relates to four of the five theories of negligence alleged by Plaintiffs. Therefore, the Court need only address District Defendants' challenge to Mrs. Johnson's standing in the context of the sole remaining theory of negligence alleged by Plaintiffs under the third cause of action.

1    The Court concludes that Mrs. Johnson lacks standing as to the sole remaining theory of

2    negligence alleged by Plaintiffs under the third cause of action. Plaintiffs' fifth theory of

3    negligence alleges that WCSD breached its duty of reasonable care to protect Rylee from

4    foreseeable harm by failing to adequately ensure her safety as a student. ECF No. 4 at ¶¶ 144–46.

5    Under this theory, Plaintiffs fail to establish any of the three elements of standing as to Mrs.

6    Johnson. *See Lujan*, 504 U.S. at 560–61. Plaintiffs' fifth theory of negligence concerns Rylee and

7    her safety as a student. *See* ECF No. 4 at ¶¶ 141, 44–46. And in response to District Defendants'

8    motion to dismiss, Plaintiffs argue that their negligence claim is simple: "WCSD and its employees

9    had a duty to keep Rylee, like all students, safe from foreseeable harm." ECF No. 26 at 13. Thus,

10   the allegations of conduct for which Plaintiffs argue WCSD is culpable pertain to Rylee rather than

11   Mrs. Johnson.

12   Moreover, in the FAC, Plaintiffs vaguely assert that, "[a]s a proximate result of [District]

13   Defendants' actions and inactions, Plaintiffs suffered severe mental and emotional injuries, and

14   resulting physical symptoms, and has required extensive medical treatment." ECF No. 4 at ¶ 147.

15   Plaintiffs also broadly assert "economic and non-economic damages." *Id.* at ¶ 148. Such broad,

16   vague assertions do not establish that Mrs. Johnson suffered a particularized and concrete injury.

17   *See Lujan*, 504 U.S. at 560–61. The pleading standard under Rule 8(a)(2) requires more specificity

18   than Plaintiffs' conclusory, general allegation of mental and emotional injuries. Additionally,

19   beyond these conclusory allegations, the FAC is void of allegations to establish a causal connection

20   between any injury to Mrs. Johnson and an alleged breach of its duty of reasonable care by WCSD

21   by failing to adequately ensure Rylee's safety as a student. *See generally* ECF No. 4; *see also*

22   *Lujan*, 504 U.S. at 560–61. Thus, the Court grants District Defendants' motion to dismiss in regard

23   to the fifth theory of negligence alleged by Plaintiffs under the third cause of action.[5]

---

25   [5]   The Court notes that, even if Plaintiffs had established that Mrs. Johnson had standing to sue WCSD
26   based upon Plaintiffs' fifth theory of negligence, Plaintiffs fail to establish the existence of a legally
     recognized special relationship between Mrs. Johnson and WCSD under which WCSD would owe
     her a duty to control the alleged dangerous conduct of Upton or to warn Mrs. Johnson of the
27   dangerous conduct. *See Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280–81
     (Nev. 2009) (explaining that "no duty is owed to control the dangerous conduct of another or to
28   warn others of the dangerous conduct" unless a special relationship exists between the defendant
     and the alleged victim (internal citations omitted)).

And even if Mrs. Johnson had standing, issues exist regarding the fifth theory of negligence as it relates to Mrs. Johnson. A plaintiff claiming emotional-distress damages for a negligence claim must establish that the emotional distress is either secondary to physical injury or precipitated physical symptoms. *Tims v. Clark Cty. Sch. Dist.*, No. 2:18-cv-00021-JAD-VCF, 2018 WL 4119908, at \*5 (D. Nev. 2018) (citing *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998)). Here, Mrs. Johnson vaguely claims that she "suffered severe mental and emotional injuries" as a direct result of WCSD's alleged negligence, "resulting [in] physical symptoms[] and . . . requir[ing] extensive medical treatment." ECF 4 at ¶ 147. However, the pleading standard under Rule 8(a)(2) requires more specificity than Mrs. Johnson's conclusory, general allegation of physical symptoms. Regardless, Mrs. Johnson's claim is better characterized as a claim for negligent infliction of emotional distress. Under Nevada law, negligent infliction of emotional distress is cognizable exclusively as a "bystander" claim. *Tims*, 2018 WL 4119908, at \*5 (citing *Grotts v. Zahner*, 989 P.2d 415, 415 (Nev. 1999)). But Mrs. Johnson does not allege a bystander theory of negligence. Thus, even if Mrs. Johnson had standing, she fails to state a negligence claim cognizable under Nevada law.

**B.     First Amendment Retaliation**

The Court sua sponte dismisses the first cause of action in its entirety because, under the circumstances, Plaintiffs' First Amendment retaliation claim is frivolous. Moreover, dismissing Plaintiffs' first cause of action is appropriate for the following reasons: (1) the public has an interest in Plaintiffs' first cause of action being resolved expeditiously as it relates to the liability of public employees participating in an occupation that involves managing student athletes and parents, and clarity for these employees regarding what actions amount to First Amendment retaliation is important; (2) allowing a frivolous claim to proceed would be counter to the Court's obligation to properly manage its docket and utilize judicial resources wisely; (3) allowing Plaintiffs' frivolous claim to move forward would cause prejudice; and (4) although public policy favors disposition of cases on their merits, Plaintiffs' First Amendment retaliation claim lacks any merit.

Under the first cause of action, Plaintiffs bring a Section 1983 claim for First Amendment retaliation against Upton based upon a theory that she retaliated against Plaintiffs for criticizing

1  her to SSHS administrators, depriving Plaintiffs of rights secured by the First Amendment to the

2  United States Constitution. ECF No. 4 at 13, 14. "'[T]he First Amendment prohibits government

3  officials from subjecting individuals to retaliatory actions after the fact for having engaged in

4  protected speech.'" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (quoting *Houston Cmty.*

5  *Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022)). To establish a First Amendment retaliation claim

6  at the pleading stage, a plaintiff must allege non-conclusory factual content that, when all

7  reasonable inferences are drawn in the plaintiff's favor, plausibly suggests: (1) she "engaged in

8  constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary

9  firmness' from continuing to engage in the protected activity; and (3) the protected activity was a

10  substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the

11  defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,

12  824 F.3d 858, 867 (9th Cir. 2016) (internal citations omitted). "'If an official takes adverse action

13  against someone based on that forbidden motive, and non-retaliatory grounds are in fact

14  insufficient to provoke the adverse consequences, the injured person may generally seek relief by

15  bringing a First Amendment claim.'" *Boquist*, 32 F.4th at 774 (quoting *Nieves v. Bartlett*, 139

16  S.Ct. 1715, 1722 (2019)).

17        Regarding the first element of a First Amendment retaliation claim, the First Amendment

18  right to criticize public officials without fear of retaliatory punishment for that criticism applies to

19  students and parents criticizing school district employees. *See Rosenblatt v. Baer*, 383 U.S. 75, 85

20  (1966) ("Criticism of government is at the very center of the constitutionally protected area of free

21  discussion. Criticism of those responsible for government operations must be free, lest criticism

22  of government itself be penalized."); *see also Duran v. City of Douglas,* 904 F.2d 1372, 1378 (9th

23  Cir.1990) (recognizing the First Amendment right to criticize public officials without fear of

24  retaliatory punishment for that criticism); *Cain v. Tigard-Tualatin Sch. Dist. 23j*, 262 F.Supp 2d

25  1120, 1129 (D. Or. 2003) (recognizing that the First Amendment right to criticize public officials

26  without fear of retaliatory punishment for that criticism applies to students and parents criticizing

27  school district employees).

28

However, regarding the second and third elements of a First Amendment retaliation claim, the Court concludes that, even when accepting the factual allegations contained in the FAC as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs cannot establish either element. First, under the circumstances, Upton's actions would not chill a person of ordinary firmness from continuing to criticize her with SSHS administrators. Plaintiffs allege that Upton took adverse action in retaliation against Plaintiffs when they expressed discontent with Upton's coaching decisions to SSHS administrators. ECF No. 4 at ¶¶ 23–30, 42–46. As a reminder, during the first month of the 2021 fall semester, Plaintiffs met with SSHS administrators more than once to criticize Upton's coaching decisions and comments. *Id.* But Plaintiffs' grievances with Upton's coaching decisions do not amount to Upton taking adverse action against Plaintiffs in the context of a First Amendment retaliation claim. In an attempt to establish that Upton took adverse action against them, Plaintiffs allege that Upton sat with and had a conversation with Rylee's teammate, decreased Rylee's playing time, instructed Rylee's teammates to verify her location, and provided feedback in a manner Plaintiffs did not appreciate. ECF No. 4 at ¶¶ 33–37. Plaintiffs also claim that, after a volleyball game, Upton told the whole team to not let their parents "talk shit" and during a practice instructed the entire team "to stop talking to [their] fucking parents about what goes on in practice" because parents are often wrong and should "shut the fuck up." *Id.* at ¶¶ 38, 55.

In the context of adverse action by school officials in retaliation for criticism by students or their parents, proving the existence of adverse action requires a plaintiff to do more than provide a list of coaching decisions and comments with which the plaintiffs object. Adverse action by school officials involves objectively egregious behavior such as indefinitely banning parents from school campus, improperly altering student grades, or physically restraining students' freedom of movement. *See Hartzell v. Marana Unified Sch. Dist.*, No. CV-21-00062-TUC-SHR, 2023 WL 2425009, at *4 (D. Az. 2023); *Macias v. Filippini*, No. 1:17-CV-1251-AWI–EPG, 2018 WL 2264243, at *1 (E.D. Cal. 2018); *M.D. v. Newport–Mesa Unified Sch. Dist.*, No. 14-0394-JVS-ANx, 2014 WL 8390611, at *4 (C.D. Cal. 2014), *aff'd* 840 F.3d 640 (9th Cir. 2016); *Cain*, 262 F.Supp 2d at 1126. By contrast, Plaintiffs' allegations amount to personal grievances based upon

1   Plaintiffs' subjective standards. While Upton's choice of language and coaching decisions may

2   reasonably be construed as juvenile and offensive, no reasonable juror could find that it rose to the

3   level of actionable adverse action taken against Rylee and her mother. Upton's actions simply did

4   not rise to a degree sufficient to constitute adverse action in the context of a First Amendment

5   retaliation claim.

6        Plaintiffs also cannot establish that their criticism was a substantial motivating factor in

7   Upton's allegedly retaliatory conduct. Upton's conduct was not directed at Plaintiffs and predated

8   their criticism to SSHS administrators. In an attempt to establish that Upton retaliated against

9   Plaintiffs when they criticized Upton's behavior to SSHS administrators, Plaintiffs claim that

10   Upton engaged in an "inappropriate coaching style" after their meetings with SSHS administrators.

11   ECF No. 4 at ¶¶ 30–34. For example, Plaintiffs assert that Upton verbally berated Rylee and the

12   team numerous times. *Id.* at ¶¶ 38, 55, 56. However, Upton did not singularly direct the alleged

13   retaliatory conduct at Plaintiffs. Plaintiffs admit that the rhetoric by Upton with which Plaintiffs

14   take issue was directed at the entire team and Upton also berated and disparaged players other than

15   Rylee with "foul language." ECF No. 4 at ¶ 54.

16        More significantly, the bulk of Upton's alleged retaliatory conduct predated Plaintiffs'

17   criticism. The behavior by Upton that Plaintiffs claim was retaliation against them for criticizing

18   her to SSHS administrators in August of 2021 is the same behavior that Plaintiffs claim caused

19   Rylee to leave NNJ in 2020. ECF No. 4 at ¶¶ 30, 54, 57. Plaintiffs claim that Upton retaliated

20   against Plaintiffs for Rylee leaving NNJ in 2020 by displaying favoritism toward Rylee's

21   teammates, decreasing Rylee's playing time, turning Rylee's teammates against her, and providing

22   feedback in a manner Plaintiffs did not appreciate. *Id.* at ¶¶ 23–28. This is a significant part of the

23   conduct Plaintiffs claim Upton engaged in for the purpose of retaliating against Plaintiffs after they

24   criticized Upton to SSHS administrators. *Id.* at ¶¶ 33–37. Accordingly, Plaintiffs cannot establish

25   that Upton's actions occurred in retaliation for Plaintiffs' criticism to SSHS administrators. On

26   balance, no reasonable juror could find that Plaintiffs' criticism was a substantial motivating factor

27   in Upton's allegedly retaliatory conduct. Simply put, Plaintiffs cannot demonstrate that Upton took

28   actionable adverse cation against them based on a forbidden motive rather than non-retaliatory

grounds. Under the circumstances, Plaintiffs' first cause of action is frivolous, and the Court sua sponte dismisses it.

### C. *Monell* Liability.

District Defendants request that the Court dismiss Plaintiffs' second cause of action for failure to state a *Monell* claim against WCSD. ECF No. 16 at 8–13. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the Supreme Court held that "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." Therefore, to impose *Monell* liability on a municipality under Section 1983, a plaintiff must demonstrate: (1) they were deprived of a constitutional right; "(2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (internal quotation marks and citation omitted).

District Defendants argue that Plaintiffs fail to state a *Monell* claim because the allegations contained in the FAC do not establish the second element of a *Monell* claim, i.e., the policy element. ECF No. 16 at 8–13. In response, Plaintiffs contend the policy element is established in the FAC on the basis that Plaintiffs allege WCSD maintains a longstanding practice or custom of allowing employees to retaliate against students who complained about the employee's misconduct. ECF No. 26 at 10–13; ECF No. 4 at ¶ 133. In the FAC, Plaintiffs allege that WCSD does so by allowing Upton to organize retaliatory schemes against volleyball players. ECF No. 4 at ¶ 134. After careful review, the Court concludes that the FAC does not contain sufficient allegations which, accepted as true, support the existence of any such longstanding practice or custom.

A plaintiff may establish the policy element of a *Monell* claim by demonstrating that the employee who committed the constitutional tort acted pursuant to the municipal employer's longstanding practice or custom. *See Gordon*, 6 F.4th at 973 (internal citations omitted). But before a municipal employer may be held liable, the plaintiff must demonstrate that the alleged constitutional violations occurred with sufficient duration, frequency, and consistency. *Sabra v. Maricopa Cnty. Comm. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) (internal citations omitted)

1    (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Isolated or sporadic incidents of

2    constitutional deprivations are insufficient to establish a longstanding practice or custom. *Id.*

3    (citing *Trevino*, 99 F.3d at 918).

4         In an attempt to support the existence of an alleged longstanding practice or custom,

5    Plaintiffs describe two incidents involving Upton. *See generally* ECF No. 4 As alleged in the FAC,

6    the first incident occurred in 2017 when a volleyball player at a high school in WCSD, Reed High

7    School ("RHS"), filed a complaint against the head coach for racial discrimination. *Id.* at ¶ 105.

8    WCSD suspended the head coach pending an investigation, and Upton took over as the interim

9    head coach. *Id.* at ¶¶ 105–08. Shortly thereafter, the student filed a complaint against Upton for an

10   incident involving alleged bullying and harassment. *Id.* at ¶ 110. An investigation into the entire

11   incident resulted in an acknowledgment that the head coach and Upton retaliated against the

12   aggrieved volleyball player for complaining about racial discrimination, which, in relevant part,

13   resulted in Upton's employment being terminated by WCSD. *Id.* at ¶¶ 109–11. WCSD rehired

14   Upton in 2019, and the second incident of alleged harassment, which is the basis for this action,

15   occurred in 2021. *See generally id.*

16        The Court concludes that the two incidents of alleged retaliation—in 2017 and 2021—are

17   insufficient to support Plaintiffs' claim that WCSD maintains a widespread practice or custom of

18   allowing employees to retaliate against students who complained about the employee's

19   misconduct. Rather, Plaintiffs' attempt to hold WCSD liable resembles a theory of *respondeat*

20   *superior* liability more than *Monell* liability. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143

21   (9th Cir. 2012) (warning that courts must be weary of *Monell* lability collapsing into *respondeat*

22   *superior* lability).

23        As the court in *Cain* explained, "[a] school district may not be held liable for a [Section]

24   1983 action under a theory of *respondeat superior*. Thus, without more, the fact that the . . . School

25   District employed [the tortfeasor] is not enough to expose the district to liability for [the

26   tortfeasor's] conduct during school hours." 262 F.Supp 2d at 1130 (citing *Monell*, 436 U.S. at 691).

27   Like the school district in *Cain*, WCSD may not be held liable under a theory of *respondeat*

28   *superior* for employing Upton when she allegedly committed a tort in 2017 as a former RHS coach

and another tort in 2021 as the SSHS coach. While a plaintiff may attempt to prove the existence of a longstanding practice or custom "with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded," Plaintiffs acknowledge that WCSD investigated the student's complaint in 2017 and Plaintiffs' complaint in 2021, resulting in Upton's employment being terminated by WCSD on both occasions. *See Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. (1992) (internal citation omitted)); ECF No. 4 at ¶¶ 61, 111.

Moreover, although a municipal entity may be held liable for a longstanding practice or custom of inadequate employee supervision under certain circumstances, under their *Monell* claim, Plaintiffs do not allege that WCSD failed to adequately supervise Upton. *See* ECF No. 4 at ¶¶ 131–39; *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); *but see Dougherty c. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("Mere negligence in training or supervision, however, does not give rise to a *Monell* claim" (internal citation omitted)). Instead, Plaintiffs' allegations focus on Upton's conduct during the two incidents and WCSD's decision to rehire Upton after the first incident. While the two incidents may involve similar conduct by Upton, similar conduct is not the standard by which the Court determines whether a municipal entity may be held liable under *Monell*. Even under the most favorable reading to Plaintiffs, the two incidents alleged in the FAC did not occur with sufficient duration, frequency, and consistency—are too isolated and sporadic—to establish a longstanding practice or custom of WCSD allowing employees to retaliate against students who complained about the employee's misconduct. And even though WCSD rehired Upton after the first incident, a single act, i.e., rehiring Upton, "ordinarily is insufficient to establish a longstanding practice or custom."[6] *See Christie v. Lopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *see also Bd. Of Comm'rs v. Brown*, 520

---

[6]  In their response to the motion to dismiss, Plaintiffs argue that WCSD could be held liable for a widespread practice or custom of failing to adequately investigate and take necessary action in the face of reports that employees are retaliating against players and parents for complaints about the employee's misconduct. ECF No. 26 at 10. But the FAC does not contain sufficient factual allegations connecting WCSD's handling of the reports and investigations to any such practice or custom. Even if it did, the Court concludes that this theory of liability would fail because WCSD's investigations resulted in Upton's prompt termination. *See Gillette*, 979 F.2d at 1349. Furthermore, any alleged inadequacies in the investigations did not occur with sufficient duration, frequency, and consistency—are too isolated and sporadic—to establish a longstanding practice or custom. *See Sabra*, 44 F.4th at 884.

1    U.S. 397, 410–11 (1997) (explaining the risk of *Monell* liability becoming *respondeat superior*

2    liability by applying *Monell* liability to a single hiring decision by a municipal defendant).

3         Therefore, the FAC does not contain sufficient allegations that, accepted as true, establish

4    a longstanding practice or custom of allowing employees to retaliate against students who

5    complained about the employee's misconduct. Thus, Plaintiffs fail to establish the policy element

6    of a *Monell* claim, and the Court grants District Defendants' motion to dismiss in regard to

7    Plaintiffs' second cause of action.

8         **D.    Negligence**

9         Next, District Defendants request that the Court dismiss Plaintiffs' third cause of action on

10   three grounds. ECF No. 16 at 14–19. First, District Defendants argue that Plaintiffs' negligence

11   claim fails because NRS § 388.1351 does not provide a private right of action. *Id.* at 14, 15.

12   However, District Defendants' first argument is irrelevant because the third cause of action does

13   not rely upon NRS § 388.1351 as a private right of action.[7] *Id.*; *see also* ECF No. 4 at 16–18.

14   Second, District Defendants argue that they are entitled to discretionary immunity. ECF No. 16 at

15   17–19. Third, and finally, District Defendants argue that, even if discretionary immunity does not

16   apply, Plaintiffs fail to allege sufficient factual allegations to establish a negligence claim. *Id.* at

17   15–17.

18        Before addressing these arguments, the Court sua sponte addresses a preliminary issue with

19   the manner in which Plaintiffs negligence claim is pled. The issue with Plaintiffs' negligence claim

20   arises from Plaintiffs' attempt to restate their First Amendment retaliation claim under a theory of

21        [7]   Plaintiffs' third cause of action is an ordinary negligence claim, alleging that District Defendants
22              had a duty to exercise reasonable care to protect Rylee from foreseeable harm. ECF No. 4 at ¶ 141.
                Plaintiffs provide numerous theories under which District Defendants allegedly breached a duty of
23              reasonable care, one of which being a "[f]ail[ure] to address the complaints of bullying and
                harassment by [] Upton, including as required by NRS § 388.1351." *Id.* at ¶¶ 144–46. Plaintiffs use
24              of the term "including" signals that Plaintiffs are providing a non-exhaustive list of District
                Defendants' alleged failures to adequately address complaints of bullying and
25              harassment. *Id.* at ¶ 144(c). Under a plausible interpretation of the FAC, Plaintiffs allege that
                District Defendants failed to adequately address complaints of bullying and harassment by violating
26              NRS § 388.1351 and allowing Upton to retaliate against Plaintiffs for their complaints. *Id.* at
                ¶ 144(c)–(e). Plaintiffs simply use WCSD's alleged noncompliance with NRS § 388.1351 as one
27              form of evidence or a significant factor in an attempt to establish that WCSD breached its standard
                of care under an ordinary negligence claim. *See Clark Cty. Sch. Dist. v. Bryan*, 478 P.3d 344, 356–
28              58 (Nev. 2020) (holding that facts underlying a violation of NRS § 388.1351 may inform a court's
                finding so long as the court does not treat the evidence as dispositive).

negligence. ECF No. 4 at ¶ 145 (i), (j). Plaintiffs allege that Upton, in her official capacity, breached a duty of care by both directly and indirectly retaliating against Plaintiffs for filing complaints against her with SSHS administrators. *Id.* This allegation is merely a recitation of Plaintiffs' First Amendment retaliation claim. Moreover, Plaintiffs already allege that WCSD breached its duty of care when SSHS administrators failed to adequately address Plaintiffs' complaints of bullying, harassment, and retaliation by Upton. *Id.* at ¶ 144(c)–(e). Therefore, the Court strikes Plaintiffs' First Amendment retaliation allegations, those being subparts (i) and (j) of paragraph 145, from Plaintiffs' negligence claim. *See id.* at ¶ 145 (i), (j).

1. <u>Plaintiffs' first and second theories of negligence are barred by discretionary immunity.</u>

District Defendants' first argument concerns the applicability of Nevada's discretionary immunity doctrine. Generally, Nevada waives sovereign immunity. NRS § 41.031. But an exception to the general waiver applies to employees of state agencies and political subdivisions in the performance of a discretionary function. NRS § 41.032(2); *see also Boulder City v. Boulder Excavating, Inc.*, 191 P.3d 1175, 1178 (Nev. 2008) (en banc). In *Martinez v. Maruszczak*, the Nevada Supreme Court adopted the federal two-part test for determining whether discretionary immunity applies to an action performed by a state actor. 168 P.3d 720, 729 (Nev. 2007) (adopting the *Berkovitz-Gaubert* test provided in *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

For an act to constitute a discretionary function under the *Berkovitz-Gaubert* test, it must "(1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* Before turning to the *Berkovitz-Gaubert* test, however, a preliminary step in the discretionary immunity analysis requires identifying the specific government action challenged. *Glover-Armont v. Cargile*, 426 P.3d 45, 51 (Nev. App. 2018) (citing *Young v. United States*, 769 F.3d 1047, 1053–54 (9th Cir. 2014) and *N. Nev. Ass'n of Injured Workers v. Nev. State Indus. Ins. Sys.*, 807 P.2d 728, 732 (Nev. 1991)).

In that vein, Plaintiffs allege that WCSD breached its duty of reasonable care to protect Rylee from foreseeable harm by: (1) cultivating an environment that allowed bullying to flourish; (2) hiring Upton as the SSHS volleyball coach; (3) failing to supervise Upton; (4) failing to address

1    Plaintiffs' complaints of bullying, harassment, and retaliation by Upton; and (5) failing to

2    adequately ensure Rylee's safety as a student. *See* ECF No. 4 at ¶¶ 144–46.

3         Here, the Court concludes that Plaintiffs' first and second theories of negligence meet both

4    elements of the *Berkovitz-Gaubert* test and are therefore barred by discretionary immunity. Under

5    Plaintiffs' first theory, Plaintiffs broadly critique the environment they feel is occurring within an

6    entire school district. ECF No. 4 at ¶¶ 144–46. Under Plaintiffs' second theory, Plaintiffs take issue

7    with WCSD's decision to hire Upton as the SSHS volleyball coach after allegedly knowing she

8    was terminated as a volleyball coach at RHS for inappropriate behavior. *Id.* at ¶ 144. While the

9    Court certainly does not approve of inappropriate behavior in any setting, Plaintiffs' attempt to use

10   their negligence claim in an effort to authorize the Court to abstractly evaluate WCSD's judgment

11   and decisions is the very type of judicial second guessing of legislative and administrative

12   decisions discretionary immunity was created to prevent. *See Martinez*, 168 P.3d at 729

13   (instructing courts applying the *Berkovitz-Gaubert* test to "keep[] in mind Congress' purpose in

14   [creating discretionary immunity]: to prevent judicial second guessing of legislative and

15   administrative decisions grounded in social, economic, and political policy through the medium of

16   an action in tort" (internal quotation marks and citation omitted)). WCSD's judgment as to the

17   type of environment to cultivate within the entire school district as well as the information from a

18   job applicant's background WCSD must deem completely disqualifies the applicant are both

19   administrative decisions grounded in social, economic, and political policy, and the Court will not

20   second guess those decisions through the medium of an action in tort. *See id.* Thus, discretionary

21   immunity bars Plaintiffs' first and second theories of negligence.

22        Conversely, the Court concludes that discretionary immunity does not apply to Plaintiffs'

23   remaining theories of negligence. Beginning with Plaintiffs' third theory of negligence, the

24   challenged action, the alleged failure to supervise Upton, does not meet the second element of the

25   *Berkovitz-Gaubert* test because the action was not based on considerations of social, economic, or

26   political policy. Plaintiffs allege that WCSD "[f]ail[ed] to take appropriate precautions to supervise

27   Upton and ensure she did not present a threat to students." ECF No. 4 at ¶ 144. This challenged

28   action is not protected by discretionary immunity because Plaintiffs' specific allegations are not

1   based in broader policy, and the Nevada Supreme Court has recognized that "discretionary

2   immunity does not apply in cases alleging inadequate supervision or instruction, because the

3   decisions related to supervising and instruction, while discretionary, are not policy based." *See*

4   *Clark Cty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1276 (Nev. 2017) (en banc). District Defendants

5   have not convinced the Court that there are suitable grounds to stray from the Nevada Supreme

6   Court's applicable jurisprudence. Therefore, discretionary immunity does not apply to Plaintiffs'

7   third theory of negligence.

8        Finally, discretionary immunity does not apply to Plaintiffs' fourth and fifth theories of

9   negligence. Under Plaintiffs' fourth theory, they allege that District Defendants failed to address

10   complaints of bullying and harassment. ECF No. 4 at ¶¶ 144–46. Under Plaintiffs' fifth theory,

11   they allege that WCSD failed to adequately ensure Rylee's safety as a student. *Id.* Under both of

12   these theories, Plaintiffs challenge WCSD decisions that Plaintiffs allege were inadequate

13   responses under the circumstance. The decisions by SSHS administrators that Plaintiffs challenge

14   may have involved micro-level application of pre-existing policy, but Plaintiffs do not challenge

15   the pre-existing policy; they challenge the decisions of the SSHS administrators. Because District

16   Defendants have not shown how the SSHS administrators' responses were grounded in social,

17   economic, or political policy, discretionary immunity does not apply.

18        In sum, the Court grants District Defendants' motion to dismiss in regard to Plaintiffs' third

19   cause of action as it relates to Plaintiffs' first and second theories of negligence because these

20   theories are barred by discretionary immunity. However, discretionary immunity does not bar

21   Plaintiffs' third through fifth theories of negligence because, even though the challenged actions

22   satisfy the first element of the *Berkovitz-Gaubert* test, the second element has not been satisfied;

23   none of the actions were based on considerations of social, economic, or political policy to which

24   discretionary immunity would apply.

25           2.    <u>Plaintiffs' third through fifth theories of negligence fail to state a claim.</u>

26
27        District Defendants argue that, where discretionary immunity does not apply, the Court

28   should dismiss Plaintiffs' third cause of action because Plaintiffs fail to allege sufficient factual

   allegations to establish a negligence claim. ECF No. 16 at 15–17. Under Nevada law, in order for

Plaintiffs' negligence claim to survive District Defendants' motion, the FAC must contain sufficient factual matter that, accepted as true, plausibly demonstrates each of the following elements: (1) WCSD owed a duty of care to Plaintiffs; (2) WCSD breached that duty under the theory argued by Plaintiffs; (3) the breach was the legal cause of Plaintiffs' injury; and (4) Plaintiffs suffered damages. *See Momox-Caselis v. Donohue*, 987 F.3d 835, 847 (9th Cir. 2021) (citing *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996)).

Plaintiffs' third through fifth theories of negligence fail to state a claim because the FAC does not contain sufficient factual allegations that, accepted as true, plausibly demonstrate each element of a negligence claim. Beginning with Plaintiffs' third and fourth theories, Plaintiffs claim that WCSD breached its duty of care by "[f]ailing to take appropriate precautions to supervise Upton and ensure she did not present a threat to students" and by failing to address Plaintiffs' complaints of bullying, harassment, and retaliation by Upton. ECF No. 4 at ¶¶ 144–46. Plaintiffs allege that Mrs. Johnson met with Urmston sometime in August of 2021, which is approximately when the high school volleyball season began. *Id.* at ¶¶ 23–30. During the meeting, Mrs. Johnson expressed her displeasure with Upton's coaching style and decisions, including Upton's decision to name two of Rylee's teammates as team captains before formal tryouts began. *Id.* Mrs. Johnson felt that the aggrieved coaching occurred as a result of Rylee leaving NNJ the year prior. *Id.* At this point, Mrs. Johnson's complaint consisted of coaching critiques and personal grievances with Upton based upon an allegation that Upton was treating Rylee differently for leaving NNJ. *Id.* On September 7, 2021, Plaintiffs met with several WCSD administrators, and Rylee described "the retaliation she had been subjected to by" Upton after Mrs. Johnson's previous meeting with Urmston. *Id.* at ¶¶ 42–46.

Accordingly, on September 7th, WCSD first became aware of the potential need to respond to allegations that Upton participated in bullying, harassment, and First Amendment retaliation. And, as Plaintiffs admit, Hart—the principal of SSHS at the time—responded to their complaints from the September 7th meeting by assuring Plaintiffs that "Upton would be interviewed and made aware that she was under increased scrutiny." ECF No. 4 at ¶ 48. Additionally, "WCSD administrators promised [Plaintiffs] that they would observe [Upton's] coaching going forward to

1    ensure proper conduct." *Id.* at ¶ 53. Plaintiffs take issue with Upton "verbally berating" players

2    during a huddle on September 9th and during a game on September 14th. *See id.* at ¶¶ 55, 56. Yet,

3    Plaintiffs do not assert how WCSD's alleged failure to supervise Upton or address their complaints

4    caused those two instances of alleged verbal abuse. Thus, Plaintiffs fail to allege how WCSD's

5    supervision of Upton or response to their complaints fell below a requisite standard of care. Rather,

6    the FAC does little more than offer bare legal conclusions without providing facts to support those

7    legal conclusions. Therefore, Plaintiffs' third and fourth theories of negligence are insufficient and

8    fail to meet the required pleading standard under Rule 8(a).

9          Most importantly, while Plaintiffs allege that "WCSD administrators were made aware of

10   [Upton's] continued verbal abuse but took no action to protect players," Plaintiffs admit that, on

11   September 15, 2021, WCSD removed Upton from practice, placed her on leave, and ultimately

12   fired her. ECF No. 4 at ¶¶ 57, 61. In other words, WCSD administrators became aware of Upton's

13   alleged bullying, harassment, and First Amendment retaliation on September 7th, responded by

14   subjecting Upton to increased scrutiny, and removed Upton as the SSHS volleyball coach eight

15   days later. Under these circumstances, no reasonable juror could find that WCSD breached its duty

16   of reasonable care by negligently supervising Upton or failing to address Plaintiffs' complaint.

17   Moreover, no reasonable juror could find that any such alleged breaches were the legal cause of

18   any injury to Plaintiffs. Thus, because the FAC does not contain sufficient factual allegations that,

19   accepted as true, plausibly demonstrate two elements of a negligence claim, Plaintiffs third and

20   fourth theories of negligence fail to state a claim.

21         Turning to Plaintiffs' fifth theory of negligence, Plaintiffs claim that WCSD breached its

22   duty of care by failing to adequately ensure Rylee's safety as a student. ECF No. 4 at ¶¶ 144–46.

23   District Defendants argue that any alleged harm to Rylee was not foreseeable or created by conduct

24   attributable to WCSD. ECF No. 31 at 6. In the context of a motion to dismiss, this argument

25   partially fails. With regard to the duty element, "no duty is owed to control the dangerous conduct

26   of another or to warn others of the dangerous conduct" unless a special relationship exists between

27   WCSD and the alleged victim, i.e., Rylee, and the harm created by WCSD's conduct is foreseeable.

28   *See Sanchez ex rel. Sanchez*, 221 P.3d at 1280 (internal citations omitted). Under Nevada common

law, a special relationship exists between a school district, WCSD, and a pupil, Rylee. *See Scialabba*, 921 P.2d at 930. While District Defendants point to some of the measures WCSD took in response to Plaintiffs' complaints as evidence that they did not fail to ensure Rylee's safety, District Defendants acknowledge the FAC contains allegations that the harm to Rylee was foreseeable because, once Rylee's teammates began bullying her, it was foreseeable they would continue until SSHS administrators took adequate measures to protect her. ECF No. 31 at 6 (citing ECF No. 26 at 13). Therefore, the foreseeability aspect of District Defendants' argument fails.

Nevertheless, the FAC does not contain sufficient factual allegations that, accepted as true, plausibly demonstrate that WCSD's conduct created the alleged harm to Rylee—peer bullying. As alleged in the FAC, after Upton's removal as the SSHS coach, Rylee's teammates bullied and harassed her about the removal. ECF No. 4 at ¶¶ 64–67. After Mrs. Johnson and Rylee reported the alleged peer bullying, SSHS administrators administered a safety plan. *Id.* at ¶¶ 67–85, 92. Plaintiffs were not satisfied with the measures taken by SSHS administrators and requested modifications. *Id.* at ¶¶ 92–94. Plaintiffs also allege that the safety plan was not enforced. *Id.* Plaintiffs assert that Rylee's peers continued to harass her and, months after administering it, SSHS administrators changed the safety plan without immediately notifying Plaintiffs. *Id.* at ¶¶ 95–97. Yet, Plaintiffs fail to allege how any of this amounted to SSHS administrators endangering Rylee; such as how the measures taken or not taken by SSHS administrators endangered Rylee or in what way SSHS administrators endangered Plaintiffs by not implementing the requested modifications. Because the FAC does little more than offer bare legal conclusions without providing facts to support those legal conclusions, Plaintiffs' fifth theory of negligence is insufficient and fails to meet the required pleading standard under Rule 8(a). Accordingly, the Court grants District Defendants' motion to dismiss in regard to Plaintiffs' third cause of action.

### E.   Intentional Infliction of Emotional Distress ("IIED")

Finally, District Defendants request that the Court dismiss Plaintiffs' fourth cause of action for failure to state an IIED claim. ECF No. 16 at 19–21. To establish an IIED claim, Nevada law requires a plaintiff to allege, in relevant part, that the defendants performed "extreme and outrageous conduct." *Dillard Dep't Stores, Inc. v. Beckwith,* 989 P.2d 882, 886 (Nev. 1999) (en

1 | banc). District Defendants argue that Plaintiffs' IIED claim fails because the FAC does not contain
2 | sufficient factual allegations to show that the conduct of Urmston, Hart, Hawkins, and Hall was
3 | extreme and outrageous. ECF No. 16 at 20. The Court agrees and further concludes that Plaintiffs
4 | also fail to plead factual allegations to show that the conduct of Upton was extreme or outrageous.

5 |     In an attempt to show that the FAC contains sufficient factual allegations to establish
6 | extreme and outrageous conduct, Plaintiffs point to their allegations that "WCSD[8] knew that Upton
7 | had retaliated against a player in the past, conduct that warranted her termination, and [that]
8 | [Urmston, Hart, Hawkins, and Hall] failed to adequately respond, including through a failure to
9 | timely investigate Plaintiff's [sic] complaints, a failure to complete a proper investigation in
10 | accordance with policy, and a failure to implement a student safety plan despite knowing of
11 | ongoing bulling and harassment." ECF No. 26 at 17. But the Nevada Supreme Court defines
12 | "extreme and outrageous conduct [a]s that which is outside all possible bounds of decency and is
13 | regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953
14 | P.2d 24, 26 (Nev. 1998) (internal citation omitted). And, in the instant case, even after accepting
15 | Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, no
16 | reasonable person could find that the alleged conduct of Upton, Urmston, Hart, Hawkins, and Hall
17 | "is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized
18 | community." *See id.*

19 |     Plaintiffs also argue that the behavior of Urmston, Hart, Hawkins, and Hall was extreme
20 | and outrageous because, as a matter of law, extreme and outrageous conduct may occur when the
21 | defendant knew that the plaintiff was particularly susceptible to emotional distress or when the
22 | defendant abused a position of power over the plaintiff. ECF No. 26 at 17. In an attempt to support

---

[8]   The Court notes that, despite arguments in their response brief, Plaintiffs did not bring a IIED claim against WCSD. Rather, Plaintiffs' fourth cause of action exclusively names as defendants Upton, Urmston, Hart, Hawkins, and Hall. *See* ECF No. 4 at 18. Additionally, the Court is aware of Nevada law prohibiting tort claims against state employees for actions arising out of that employee's duties unless the appropriate political subdivision for which the employees work, i.e., WCSD, is also named as a defendant. *See* NRS § 41.0337. The Court is also aware that this law applies on a per claim basis and is based upon the doctrine of sovereign immunity, which would strip the Court of jurisdiction under the Eleventh Amendment to the United States Constitution. *See Craig v. Donnelly*, 439 P.3d 413, 416 (Nev. App. 2019); *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011). However, neither party has brought this issue before the Court, and Plaintiffs' IIED claim is dismissed without prejudice on a separate basis.

1    their argument, Plaintiffs cite *Rafai v. Lazaro*, 614 F.Supp.2d 1103 (D. Nev. 2009). *Id.* But

2    Plaintiffs' argument is based upon an inaccurate interpretation of *Rafai*. In *Rafai*, while interpreting

3    Nevada law concerning IIED claims, the court explained that "extreme and outrageous conduct

4    may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress,

5    by reason of some physical or mental condition or peculiarity." 614 F.Supp.2d at 1122 (internal

6    quotation marks and citation omitted). The court further explained that "[e]xtreme and outrageous

7    conduct also may arise from an abuse by the actor of a position, or a relation with the other, which

8    gives him actual or apparent authority over the other, or power to affect his interests." *Id.* (internal

9    quotation marks and citation omitted).

10        Here, the FAC does not contain sufficient factual allegations to plausibly show that the

11   conduct of Upton, Urmston, Hart, Hawkins, and Hall was extreme and outrageous. The FAC is

12   void of allegations that any of these individuals either (1) knew that Rylee was particularly

13   susceptible to emotional distress by reason of some physical or mental condition or peculiarity or

14   (2) abused a position or relation with Rylee which gave them actual or apparent authority over

15   Rylee, or power to affect Rylee's interests. Regardless, under the circumstances, this is simply not

16   an action under which an IIED claim could be successfully alleged against District Defendants or

17   Upton because no extreme and outrageous conduct occurred, whatsoever. Therefore, Plaintiffs fail

18   to state an IIED claim, and the Court grants District Defendants' motion to dismiss in regard to

19   Plaintiffs' fourth cause of action.

20        **F.    Two Remaining Issues**

21        The Court must address two remaining issues. First, District Defendants' request that the

22   Court "dismiss Plaintiffs' remaining state law claims as it lacks supplemental jurisdiction." *See*

23   ECF No. 16 at 21. The Court declines to do so. District courts with original jurisdiction in a civil

24   action "have supplemental jurisdiction over all other claims that are so related to claims in the

25   action within such original jurisdiction that they form part of the same case or controversy under

26   Article III of the United States Constitution." 28 U.S.C. § 1367(a). But even after dismissing the

27   federal claims, the district court is not automatically deprived of subject matter jurisdiction over

28   the remaining supplemental state claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635

(2009). Instead, the district court retains discretion to continue exercising supplemental jurisdiction over the action comprised of only state law claims or remand the action back to state court. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 962 (9th Cir. 2014) (citing 28 U.S.C. § 1367(c)(3)). The court must determine whether there are compelling reasons for declining jurisdiction while "consider[ing] what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in" *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). *Arroyo v. Rojas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (internal quotation marks and citations omitted).

In the instant case, compelling reasons exist for retaining supplemental jurisdiction over the action despite the fact that the exclusive cause of action which Rylee may bring against WCSD in a second amended complaint is a negligence claim. At this point, the Court has devoted considerable time and judicial resources to this action and is thoroughly familiar with the alleged history of the parties. It would best serve the principles of economy, convenience, fairness, or comity to retain supplemental jurisdiction. Thus, the Court denies District Defendants' request to dismiss Rylee's remaining state law claim on jurisdictional grounds.

Second, Plaintiffs request leave to amend. ECF No. 26 at 19. After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing FED. R. CIV. P. 15(a)). Courts should grant leave to amend freely when justice so requires. *Id.* (citing FED. R. CIV. P. 15(a)). Generally, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (internal citations omitted).

District Defendants oppose Plaintiffs' request for leave to amend on the basis of futility, arguing that "no facts exist to save Plaintiffs' . . . claims."[9] ECF No. 31 at 12. The Court disagrees

---

[9] District Defendants also argue that allowing Plaintiffs to amend their FAC could prejudice District Defendants by forcing them to defend against claims that should be dismissed, unnecessarily prolonging litigation. ECF No. 31 at 12. However, without further elaboration, this second argument is merely an extension of District Defendants' first futility argument.

in part. The Court grants Plaintiffs' request for leave to amend in so far as Plaintiffs may attempt to cure the legal defects with Plaintiffs' third cause of action as it relates to Plaintiffs' fifth theory of negligence—WCSD's allegedly failure to adequately ensure Rylee's safety. But as to Plaintiffs' First Amendment retaliation, *Monell* and IIED claims, as well as Plaintiffs' first through fourth theories of negligence under the third cause of action, the Court agrees with District Defendants' argument in opposition to allowing Plaintiffs to amend the FAC. Under the circumstances, there are no facts that could cure the legal defects the Court has identified in these causes of action, and Plaintiffs' request for leave to amend is denied.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' first cause of action is **DISMISSED,** with prejudice, in accordance with this Order.

IT IS FURTHER ORDERED that District Defendants' motion to dismiss (ECF No. 16) Plaintiffs' First Amended Complaint (ECF No. 4) is **GRANTED**. Plaintiffs' second and fourth causes of action are **DISMISSED** with prejudice. The first through fourth theories of negligence under Plaintiffs' third cause of action are also **DISMISSED** with prejudice. But the fifth theory of negligence under Plaintiffs' third cause of action is **DISMISSED**, without prejudice, in accordance with this Order.

IT IS FURTHER ORDERED that Mrs. Johnson is **DISMISSED**, with prejudice, as a party in this action for lack of standing, and Upton, Hall, Urmston, Hart, and Hawkins are **DISMISSED**, with prejudice, as parties in this action because each of them are redundant defendants under Rylee's negligence claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1        IT IS FURTHER ORDERED that Rylee is granted leave to file a second amended

2 complaint within **30 days** from the date of entry of this Order if she believes she may cure the

3 deficiencies identified in this Order related to the fifth theory of negligence under her third cause

4 of action.

5        IT IS SO ORDERED.

6        DATED this 18th day of January, 2024.

7

8                                        LARRY R. HICKS

9                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28